## SUPREME COURT—IN BANCO.

### OCTOBER TERM—1876.

JAMES WIGHT *vs.* W. C. JONES AND R. F. BICKERTON, ASSIGNEES OF F. G. PADEKEN, A BANKRUPT.

SECTION 978 of the Civil Code requires actual notice of insolvency in order to invalidate a purchase bona fide and for good consideration, and it is not sufficient to show general reputation of the insolvency or "reasonable cause to believe" it.

The defendant cannot take up exceptions noted by the plaintiff only.

Verdict will not be set aside where it does not appear MANIFESTLY the result of bias or misunderstanding of the evidence.

OPINION BY JUDD, J.[*]

This is an action brought by a grantee under a conveyance from F. G. Padeken, acknowledged on the 14th August, 1875, to recover damages for the value of a sugar mill taken and sold by the defendants as Padeken's assignees, in bank-

[*]Adopted by the Court in Banco, see page 759.

ruptcy. The jury returned a verdict for plaintiff for $500.

The defendants moved for a new trial on the ground (1st) of errors of the Court in excluding certain evidence, and in charging the jury, and (2d) that the verdict was contrary to evidence.

The alleged errors of law are:

That the Court erred in not permitting evidence to go to the jury, offered by the defendants, to prove the general reputation of F. G. Padeken's insolvency at the time of the execution of the alleged deed, as a circumstance to presume a knowledge of this fact on the part of the plaintiff at the time.

The case of Lee *vs.* Kilburn, 3 Gray, 594, is quoted as authority in favor of admitting evidence that, at the time of the conveyance, the debtor was reputed to be insolvent in the town where he resided as competent evidence to prove that the defendant had reasonable cause to believe him insolvent.

See also Denny *vs.* Dana, 2 Cushing, 160.

But in the Massachusetts Statutes of 1841, under which these cases arose, the property assigned by an insolvent to a preferred creditor, can be recovered by the assignee in insolvency, provided the creditor had " reasonable cause to believe " that the debtor was insolvent.

The same provision is incorporated in Section 35 of the General Bankrupt Law of the United States of 1867.

General reputation of insolvency might very properly tend to show that the purchaser had reasonable cause to believe that such was the fact. But in this kingdom our statute contains no such provision. It reads as follows, Section 978: * * " Every assignment, conveyance, or transfer of his (the insolvent's) property by him, after he shall have become insolvent, or committed an act of bankruptcy, except upon a good consideration to a *bona-fide* purchaser having no notice of his insolvency or bankruptcy, shall be void, and the prop-

erty so transferred may be recovered and disposed of by the assignees for the benefit of the creditors."

It is not sufficient under our statute to show that the purchaser had "reasonable cause to believe" that his vendor was insolvent or had committed an act of bankruptcy, but he must be shown to have had "notice" of such insolvency or bankruptcy. General reputation in the place where the debtor resided would not be evidence of notice to the particular purchaser, and under the wording of our statute would be inadmissible.

It is alleged that the Court erred in instructing the jury that "if they find that the mill was a fixture not moveable without injury to the freehold, they will find that the plaintiff was entitled to it under the mortgage."

What the Court did charge was as follows: "If the jury find that the mill was immoveable, fixed to the freehold so that it could not be taken away without injury to the freehold and was attached to the premises at the time the mortgage was made, then it would pass to the plaintiff as mortgagee without reference to the bill of sale. But if the jury find it moveable, then they will consider whether the bill of sale conveying it was in fraud of creditors." To this the plaintiff excepted, but no exception was taken to this instruction by the defendants.

It, therefore, cannot be considered now.

The third cause of exception alleged is that the Court erred in refusing the instruction asked for by the defendant, that it was incumbent on the plaintiff to show a consideration for the sugar mill, outside of the mortgage consideration, as said mill was not included in the mortgage.

The Court charged that the jury must find that the sale of the mill was for a "valuable consideration," and that Wight was a *bona fide* purchaser, and that the consideration stated in the conveyance must be considered by them as sufficient unless it was rebutted. To this no exception was taken at this trial.

The motion for a new trial also alleged that the verdict was contrary to evidence in that the testimony of John Padeken, the son of F. G. Padeken, shows that when the deed in question was executed it was with the condition that it would be returned in three months if Padeken got over his troubles, and was therefore made to defraud, hinder or delay creditors. The jury were properly instructed on this point, "that if they believed from the testimony that the deed in question was fraudulent, that is, made to pass the property into Wight's hands temporarily only, then they might find that it was given to delay or hinder his creditors and their verdict must be for the defendants." Now, the jury were either not convinced that this testimony was true, or that it was sufficiently certain to admit only of the construction placed upon it by the defendants.

The testimony of Dayton and Fyfe of the contents of a letter written by Wight to Padeken after the bill of sale was given, is also claimed to sustain the testimony of John Padeken. The letter as the witness Fyfe best remembers it, makes Wight to say, "if you will send me a bill of sale (of certain chattels) I will keep them along with the other articles of yours which I now have, for if the Jackson suit goes against you it will sweep everything away, and if you get out of prison, I will return them to you, less expenses."

The letter would certainly tend to show collusion of some kind, but its conclusiveness having been left to the jury, and the fact of its having been written after the deed was given may have led the jury to decide that it referred too remotely to the conveyance in question, and I cannot say that they had no right to make this inference.

It is not sufficient that the evidence might incline the Court to a different result, for the province of the jury is to judge of the credibility of witnesses and the conclusiveness of the evidence, and I am unable to say that the evidence which was laid before them was so *manifestly* or so strongly preponderated against the verdict they rendered as to force the

conclusion that they must have been controlled by some improper bias or have misunderstood the evidence.

A new trial is therefore refused.

A. FRANCIS JUDD,

Justice Supreme Court, presiding at the term.

A. S. Hartwell for plaintiff.

The defendants in person.

Honolulu, October 31st, 1876.

---

SUPREME COURT IN BANCO—JANUARY TERM, 1877.

*Allen, Ch. J., Harris and Judd, J. J.*

The Court having considered all the allegations and exceptions in the above case, are of opinion, that the rulings of the Justice who held the trial were correct.

The letter, the contents of which as testified to by Mr. Fyfe are set forth in the opinion of Mr. Justice Judd, we are of the opinion not only tends to show collusion as is stated by him, but is very strong evidence in that direction, for it shows a willingness to take property for the purpose of sheltering it from creditors. The letter states that " he will keep them along with other articles of yours which I now have." This would well have justified a verdict for the plaintiff. But the letter was written subsequently to the conveyance, which is in question in this case, and it was placed in a correct light by the Judge in his charge, and was probably taken into full consideration; perhaps the jury thought it was not entirely clear that the subject of this present suit was among the articles referred to. And we cannot say that the verdict was so contrary to the testimony as to be unreasonable, whatever weight the letter would have had upon our individual minds.

The motion for a new trial must therefore, be denied.

Honolulu, January 24th, 1877.